```
 1            IN THE UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF MISSOURI
 2                   WESTERN DIVISION

 3
     UNITED STATES OF AMERICA,      )
 4                                  )
                    Plaintiff,      )  No. 18-00293-22-CR-W-DGK
 5                                  )  April 16, 2021
             V.                     )  Kansas City, Missouri
 6                                  )  CRIMINAL
     CHRISTAPHER DEAN PARTON,       )
 7                                  )  VIDEOCONFERENCE HEARING
                    Defendant.      )
 8                                  )

 9


10               TRANSCRIPT OF CHANGE OF PLEA

11       BEFORE THE HONORABLE DAVID GREGORY KAYS
              UNITED STATES DISTRICT JUDGE
12

13      Proceedings recorded by electronic stenography
               Transcript produced by computer
14


15            APPEARING BY VIDEOCONFERENCE

16
     For Plaintiff:         MR. BRUCE A. RHOADES
17                          Assistant U.S. Attorney
                            400 E. 9th Street, 5th Floor
18                          Kansas City, MO 64106

19   For Defendant:         MS. LINDA KOCH MARSHALL
                            Attorney at Law
20                          2431 NW Valley View Drive
                            Lee's Summit, MO 64081
21

22

23

24

25
```

                    Kathleen M. Wirt, RDR, CRR
                  United States Court Reporter
      400 E. 9th Street, Suite 7452 * Kansas City, MO 64106

1    APRIL 16, 2021

2    - - -

3    THE COURT:  Good morning.  This is -- first let me

4    see, is it Mr. Parton?  Can you hear me, sir?

5    Mr. Parton, sir, if you would touch your screen, and

6    you'll see an option to unmute because we can't hear you yet.

7    There you go.  Can you hear me, sir?

8    THE DEFENDANT:  Yes, sir.

9    THE COURT:  Okay.  Thank you.  Welcome to you, Mr.

10   Parton.

11   This is Case 18-293-22, United States of America

12   versus Mr. Christapher Dean Parton.  Welcome to everyone.  I

13   note for the record that Mr. Parton appears -- I believe he's

14   in Caldwell County Jail.  He appears remotely today.  Also

15   appearing today is his attorney, Ms. Linda Marshall.  Welcome,

16   Ms. Marshall.

17   MS. MARSHALL:  Thank you, Your Honor.

18   THE COURT:  Also appearing today is our Assistant

19   United States Attorney, Mr. Bruce Rhoades.  Welcome to you,

20   Mr. Rhoades.

21   MR. RHOADES:  Good morning, Your Honor.

22   THE COURT:  And also appearing today is United

23   States Probation Officer Matthew Falkner.

24   And I note that we have a number of people who are

25   watching.  If those people who are watching -- we welcome you,

1  but you need to mute your device, if you would.  That would

2  help us make a -- do our job and make a better record.

3          Mr. Parton, a couple of things before we get started

4  here today.  I know that Ms. Marshall does a good job of

5  explaining this to her clients; but still yet, if you have a

6  question during the course of this hearing, it will be very

7  important for you to let us know.  Will you do that, sir?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  If you do that, I'll tell you that we'll

10 stop what we're doing, and I'll work to answer any of your

11 questions, or you can talk to Ms. Marshall.  I'm confident she

12 can answer your questions.  But unless we hear from you, sir,

13 we're going to presume that you understand everything that

14 we're doing.  You understand that?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  Also, Mr. Parton, we have this tool that

17 we can use where if you need to talk to Ms. Marshall during the

18 course of this, all you've got to do is let us know; and if you

19 let us know that you want to talk to your attorney, we'll put

20 you in a private room where no one can hear you with just you

21 and Ms. Marshall.  But we'll wait for you to tell us if you

22 want to exercise that option, okay?

23         THE DEFENDANT:  Okay.

24         THE COURT:  And next I'd like to talk to you about

25 the fact that we're doing this virtually, right?  This is a new

way of doing things, and we're doing this in light of the
global pandemic.  It's still part of that process, and we have
a statute that the President signed and Congress passed called
the CARES Act, and that's how we're doing this.  But in order
for us to conduct this hearing, you have to consent and say
it's all right.  And Ms. Marshall filed a document with us,
it's Document 460.  It's defendant's motion to appear at change
of plea hearing by videoconferencing, and you're the one who
agreed to this; is that correct, sir?

          THE DEFENDANT:  Yes, sir.

          THE COURT:  And you knew she was going to file that
motion on your behalf; is that correct?

          THE DEFENDANT:  Yes, sir.

          THE COURT:  And by doing so -- I always tell people
we can't do this without your consent, but the fact that you
consented or we're doing it this way doesn't really help or
hurt your case, it just moves it along in a more timely
fashion.  You understand that?

          THE DEFENDANT:  Yes, sir.

          THE COURT:  And basically in the motion -- I'm not
going to read it all because it's very well crafted, but
Ms. Marshall states that you consent to this.  In fact, you're
asking to have this hearing virtually instead of waiting for a
court date in the future to do it in person.  Is that correct?

          THE DEFENDANT:  Yes, sir.

1          THE COURT:  And, Mr. Parton, you're also saying --

2 she's also saying, pursuant to the CARES Act, that your case

3 fits within that criteria and that further delay would be an

4 injustice in your case.  Do you agree with that, sir?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Okay.  So at this time, I am going to --

7 do you have any questions about that motion, sir, that

8 you're --

9          THE DEFENDANT:  No, sir.

10          THE COURT:  All right.  Thank you, Mr. Parton.  Then

11 at this time I will sustain this motion to appear via video.

12 So thank you for that.

13          So, Mr. Parton, I have a number of questions that I

14 want to go through.  Like I said, if you have any questions,

15 please let us know.

16          Please begin, sir, by speaking your full name and

17 spelling your last name for us, sir.

18          THE DEFENDANT:  Christapher Parton, P-A-R-T-O-N.

19          THE COURT:  And your middle name is Dean; is that

20 correct, sir?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Mr. Parton, sir, what is your date of

23 birth?

24          THE DEFENDANT:  04/25/1989.

25          THE COURT:  And how old does that make you, sir?

1          THE DEFENDANT:  Thirty-one.

2          THE COURT:  And where are you from, Mr. Parton?

3          THE DEFENDANT:  St. Joseph, Missouri.

4          THE COURT:  Okay.  Is that where you lived before

5  you were incarcerated, sir?

6          THE DEFENDANT:  I was living in Kansas City before I

7  was incarcerated, but that's where I've lived most of my life.

8          THE COURT:  Yes, sir.  What's the highest level of

9  education which you've completed, sir?

10          THE DEFENDANT:  I've completed high school and got

11  my diploma, and then I got a year at a trade school at

12  Hillyard, Hillyard Tech for automotive technology.

13          THE COURT:  Very good.  And so that means you can

14  read and write; is that correct?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  What kind of work do you do?

17          THE DEFENDANT:  I'm a mechanic, and also I do lawn

18  care and landscaping.  Construction, but mostly automotive and

19  lawn care and landscaping.

20          THE COURT:  Automotive and lawn care/landscaping.

21  So describe your physical health for us today, Mr. Parton.

22          THE DEFENDANT:  Other than having some back pain,

23  I'm doing all right.

24          THE COURT:  Other than back pain, you have good

25  physical health?

1              THE DEFENDANT:  Yes.

2              THE COURT:  Has the doctor diagnosed you with any

3    specific back issue, sir?

4              THE DEFENDANT:  No, I think it's just to do with

5    just stuff here, like the shoes and what I'm sleeping on.  I'm

6    seeing a nurse today hopefully.

7              THE COURT:  Okay.  So you don't, haven't received a

8    diagnosis.  Are you taking any medication to help mitigate or

9    help you with that pain, sir?

10             THE DEFENDANT:  No, not yet.

11             THE COURT:  Okay.

12             THE DEFENDANT:  Hopefully today that will change.

13             THE COURT:  So other than that, you're in good

14   physical health; is that true?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Let's talk about your mental health.  Do

17   you suffer from any mental illness or emotional disability or

18   problem?

19             THE DEFENDANT:  Anxiety and depression.

20             THE COURT:  Have you been diagnosed by a doctor with

21   those problems?

22             THE DEFENDANT:  I've seen a doctor before, and I've

23   been on medication before, and I don't think I've fully been

24   diagnosed, if you want to say.  I don't know how else really to

25   say it.  I'm sorry.

1          THE COURT:  Okay.  That's all right.  You think that

2    there's more to it and a doctor could tell you more; is that

3    fair?

4          THE DEFENDANT:  Yeah.

5          THE COURT:  And do you take medication today

6    regarding that?

7          THE DEFENDANT:  No.

8          THE COURT:  Okay.  And it's fair to say, Mr. Parton,

9    I can imagine that you're under some stress in your current

10   situation.  Is that fair?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  Do you think these symptoms of anxiety

13   and depression affect your ability to work with Ms. Marshall

14   and help her in your defense and understand what we're doing?

15         THE DEFENDANT:  No.

16         THE COURT:  You understand things, you're just

17   stressed out, basically; is that fair?

18         THE DEFENDANT:  Yeah, that's fair.

19         THE COURT:  And so we've covered everything.

20   There's no medications you're taking right now, either

21   over-the-counter or prescription; is that right?

22         THE DEFENDANT:  I'm taking blood pressure medicine,

23   but that's it.

24         THE COURT:  Okay.  Let's get back to the blood

25   pressure medicine.  You've been diagnosed with high blood

1  pressure, I guess, right?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Okay.  We would put that under your

4  physical health category.

5          THE DEFENDANT:  I --

6          THE COURT:  And how long -- I'm sorry, sir?

7          THE DEFENDANT:  I didn't think of that.  I didn't --

8          THE COURT:  That's all right.  It happens all the

9  time.  Don't worry about it, Mr. Parton.

10          THE DEFENDANT:  Okay.

11          THE COURT:  How long have you been taking blood

12  pressure medication, sir?

13          THE DEFENDANT:  For about a year now.

14          THE COURT:  Okay.  And you're taking the medication

15  while you're incarcerated, as well; true?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Does that affect your ability to

18  understand or appreciate what we're doing here today, sir?

19          THE DEFENDANT:  No, sir.

20          THE COURT:  Do you remember the name of that

21  medication, sir?

22          THE DEFENDANT:  I think -- I can't remember,

23  honestly.

24          THE COURT:  Okay.  That's all right.  That's no

25  problem.

1    THE DEFENDANT:  I can't give you a solid answer.

2  You know what I mean?

3    THE COURT:  That's good, that's fine.  We just want

4  you to do your best, and not everybody remembers that.  I

5  certainly understand.

6    Ms. Marshall, is it your opinion that your client is

7  competent, clear-headed, and able to understand what we're

8  doing in this case, ma'am?

9    MS. MARSHALL:  It is, Your Honor.

10    THE COURT:  Has he been that way for the duration of

11  your representation?

12    MS. MARSHALL:  Yes, Your Honor.

13    THE COURT:  Thank you, Ms. Marshall.

14    So, Mr. Parton, have any other attorneys other than

15  Miss Linda Marshall represented you in this matter?

16    THE DEFENDANT:  Could I talk with Linda for a

17  second?  If she wants to --

18    THE COURT:  Do you want to talk to your attorney?

19    MS. MARSHALL:  Your Honor, there was an attorney

20  that represented him when he went and did a -- made a statement

21  to federal authorities, and this was before he was formally

22  charged.

23    THE COURT:  Okay.  But since he's been formally

24  charged, you've represented him; is that right?

25    MS. MARSHALL:  That is correct.

1          THE COURT:  Do you agree with that, Mr. Parton?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  And we don't remember the attorney's

4   name, do we?

5          MS. MARSHALL:  It was James...

6          THE DEFENDANT:  Patterson, I think?  Patton?

7          THE COURT:  Okay.  That's all right.  That's all

8   right.

9          THE DEFENDANT:  Okay.

10         THE COURT:  Do you still -- can we go forward, or do

11  you want to talk to your attorney, Mr. Parton?

12         THE DEFENDANT:  I think we're good.  We can go

13  forward, Your Honor.

14         THE COURT:  Okay.  It takes a little while to do

15  that, so -- but I don't want you to be afraid to ask for that,

16  but it does take a little time to do that.

17         So here is the deal.  The -- Ms. Marshall has

18  represented you since you were charged, but before that,

19  another attorney, pre-indictment, worked with you; is that

20  fair?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  And do you have any complaints about

23  anything these attorneys have done for you?

24         THE DEFENDANT:  No, Your Honor.

25         THE COURT:  Okay.  Let's talk about -- the person

1  before, whatever his name was, he didn't do anything to affect

2  or hurt, undermine your case; is that right?  Or it may not be

3  right, I don't know.  I'm sorry, I don't want to put words in

4  your mouth, sir.

5          THE DEFENDANT:  You're not.  I'm just -- I just

6  don't really know how to answer that question.

7          THE COURT:  Here is the way I look at this.

8  Notwithstanding anything your attorney did, the first attorney,

9  you would still be here today pleading guilty under these

10  circumstances; is that true?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Okay.  Let's talk about Ms. Marshall.

13  Are you satisfied with her representation?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Do you have any complaints about

16  anything she did do or failed to do on your behalf, sir?

17          THE DEFENDANT:  No.  No, sir.

18          THE COURT:  Now, I know Ms. Marshall does good work,

19  but there's one thing she can't do for you.  She can't make the

20  decision to plead guilty.  Hopefully you've counseled with her,

21  you've maybe talked to friends or family, but you understand

22  you're the only one, Mr. Christapher Parton is the only one who

23  can make a decision about whether or not he pleads guilty.  Do

24  you understand that?

25          THE DEFENDANT:  Yes, sir.

1          THE COURT:  So the question is, is it your decision

2   and your decision alone to plead guilty, sir?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  And it's my understanding that you and

5   the government have entered into a plea agreement; is that

6   true, sir?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  So what I would like to do is I'm going

9   to ask my courtroom deputy clerk to put that plea agreement on

10  the screen for us to look at, and I just want to go over

11  part -- it's all important, but I just want to go over part of

12  it with you, okay?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  So here is the cover sheet.

15         Could you make that a little bit bigger, Miss

16  Strodtman?

17         Can you see that, Mr. Parton?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  Does this look like the cover sheet of

20  that plea agreement that you signed?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  Let's go to the very back page, I think

23  it's Page 19.  This is 19 pages long.  It says there on

24  March 19, 2021 -- is that your signature above your name?

25         THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Did you sign this document to indicate

2    to me that you've read this and you've understood this?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Now, you understand this is an agreement

5    you have with the government, this is not my agreement.  You

6    understand that?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  You understand that judges -- that I

9    respect these agreements, but I don't have to follow these

10   agreements.  Do you understand that?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  Okay.  And it says here -- you've talked

13   about a lot of things, you've worked with your attorney on

14   this, and this is your decision, basically; true.

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  Let's go to Paragraph 2, which is found

17   on Pages 1 and 2.  This is what you're pleading guilty to, and

18   I always like to talk to people about this.  I know you know

19   this stuff, but I just want to make sure you and I are on the

20   same page.

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  There's parts of this the government is

23   dismissing, but there's parts of this you're pleading guilty

24   to; is that right?

25         THE DEFENDANT:  Yes, sir.

1      THE COURT:  So it says here you're pleading guilty

2  to the following.  Count One of the third superseding

3  indictment is conspiracy to distribute methamphetamine.  You're

4  pleading guilty to that count; is that true?

5      THE DEFENDANT:  Yes, sir.

6      THE COURT:  The next page, Count Two of the third

7  superseding indictment, the charge of conspiracy to commit

8  money laundering.  Do you understand that charge?

9      THE DEFENDANT:  Yes, sir.

10      THE COURT:  Next is -- Count Four is that you

11  carried, possessed, or used firearms during, in relation to, or

12  in furtherance of drug trafficking.  You understand that

13  charge; is that correct?

14      THE DEFENDANT:  Yes, Your Honor.

15      THE COURT:  And then there's an allegation of

16  forfeiture.  You're agreeing to a forfeiture, but also a money

17  judgment to be assessed against you.  And generally, it's an

18  amount of the street value of the drugs that you're responsible

19  for, times the amount of drugs, right?  They take the value

20  times how many drugs, how much -- the weight of the drugs

21  that's assessed to you.  Do you understand that's how that's

22  calculated, generally?

23      THE DEFENDANT:  Yes, sir.

24      THE COURT:  Okay.  So that's Paragraph 2.  Do you

25  have any questions about the nature of the charges that are

1 filed against you, sir?

2          THE DEFENDANT:  No, sir.

3          THE COURT:  Okay.  I know you and Ms. Marshall have

4 covered that very well.

5          Next, if you'll turn to Paragraph 5, Madam Clerk,

6 it's Page 5 and 6.  I have to go over this with you.  This is

7 labeled statutory penalties, Mr. Parton.

8          THE DEFENDANT:  Uh-huh.

9          THE COURT:  Sir, this is what Congress has said the

10 punishment is that's associated with these particular, these

11 three charges, right?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  So I need to make sure you understand

14 the range of punishment.  This isn't necessarily what you're

15 going to get, this is just the range of punishment that the

16 Court considers.  You understand that?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  So Count One, the conspiracy to

19 distribute methamphetamine, says the maximum penalty the Court

20 may impose is not more than 20 years in prison and not more

21 than a million dollar fine, and the Court shall impose not less

22 than three years supervised release.  You understand that's the

23 range of punishment of Count One?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Count Two, the conspiracy to commit

money laundering, the maximum penalty the Court may impose is not more than 20 years' imprisonment, not more than a $500,000 fine, and the Court shall not impose -- shall impose not more than three years of supervised release, and this is a Class C felony. Do you understand that range of punishment, sir?

THE DEFENDANT: Yes, Your Honor. Yes, Your Honor.

THE COURT: Okay. Count Four, which is the gun charge, the Court must impose -- the minimum penalty the Court must impose is five years in prison, consecutive or after any other sentence imposed, while the maximum penalty the Court may impose is not more than life imprisonment, consecutive to any other sentence imposed, and not more than a $250,000 fine. And the Court shall impose not more than five years of supervised release, and this is a Class A felony. You understand the punishment related to those charges?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Or that charge.

THE DEFENDANT: Yes, sir.

THE COURT: And then also you acknowledge you understand the forfeiture, that you're agreeing that certain things can be forfeited to you, correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And there's also an -- you have three felonies that you're pleading guilty to. And there's a $100 mandatory special assessment, which is required by statute.

1  You understand that will be assessed on each count.

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  And so you understand you could be

4  sentenced anywhere within that range, those ranges of

5  punishment which we discussed, correct?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Okay.  I'm moving on, but we can always

8  go back to stuff.  If you ever want to go back to stuff we're

9  talking about, Mr. Parton, I'll be happy to go with you.  Okay?

10         THE DEFENDANT:  Okay.  Thank you, Your Honor.

11         THE COURT:  Yes, sir.  So the next part I'd like to

12 talk about is Paragraph 3 of the plea agreement, and it's found

13 on Pages 2, 3, 4, and 5.

14             This is the factual basis for guilty plea.  And if

15 we look at the very first part of this, it says the parties

16 agree that the facts constituting the offenses to which the

17 defendant is pleading guilty are as follows.  Then it lists,

18 you know, three or four pages of stuff.  You've agreed to all

19 of this stuff, though, right?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  So basically when we talk about this

22 part of it, Mr. Parton, we're talking about you and the

23 government got together and said, Judge, these are the true

24 facts of the case; is that correct?

25         THE DEFENDANT:  Yes, Your Honor.

1                THE COURT:  Any questions about Paragraph 3?

2                THE DEFENDANT:  No, sir.

3                THE COURT:  Okay.  I'm going to move on, then.  So

4   let's go to Paragraph 15, if we could, that's found on Page 15,

5   as it turns out.  Paragraph 15 is labeled Waiver of Appellate

6   and Post-Conviction Rights.  Do you see that?

7                THE DEFENDANT:  Yes, Your Honor.

8                THE COURT:  Paragraph 15 represents something you're

9   giving up.  In every plea agreement, there are things that

10  benefit you, and there are things that benefit the government.

11  This is an example of something that benefits the government.

12  You're saying in exchange for whatever benefit you receive,

13  you're agreeing that you will not appeal this case, you waive

14  your right to appeal, and you waive your right to file

15  post-conviction motions in all respects, except for three,

16  which you can't waive:  ineffective assistance of counsel,

17  prosecutorial misconduct, or illegal sentence.  In all other

18  ways, you're waiving your rights.  Do you understand that?

19                THE DEFENDANT:  Yes, Your Honor.

20                THE COURT:  Any questions about Paragraph 15, sir?

21                THE DEFENDANT:  No, sir.

22                THE COURT:  Okay.  All right.  Thank you, Madam

23  Clerk, we'll take this down.  If there's anything else you want

24  to talk about on that plea agreement, let me know, okay,

25  Mr. Parton?  It's all important, but those are the things I'm

1  required to highlight.  Okay?

2          THE DEFENDANT:  Yes, Your Honor, thank you.

3          THE COURT:  Okay.  So let's start, if we could, with

4  Mr. Rhoades.  Could you state pursuant to the *Lafler* and *Frye*

5  cases, sir, what prior formal plea agreements were extended to

6  Mr. Parton?

7          MR. RHOADES:  There were no prior formal plea

8  agreements, Judge.  There was a lot of discussion back and

9  forth about resolution of the case; but as far as any formal

10 plea agreements, there were no other formal plea agreements

11 made.  Or, I'm sorry.  There were no other formal plea offers

12 made.  There was a slew of discussion back and forth --

13         THE COURT:  Yeah.

14         MR. RHOADES:  -- for many weeks, multiple e-mails,

15 but there were no other formal plea offers made, other than the

16 one as reflected in this plea agreement.

17         And, Judge, even if there was something that one

18 party or the other would consider a formal plea offer, none of

19 those were better than what is currently reflected in the plea

20 agreement before the Court.

21         THE COURT:  Thank you, sir.

22         Ms. Marshall, I know you work very hard to try to

23 get the best outcome for your clients, and there's a lot of

24 back and forth, and certainly we don't have time to cover all

25 of that because that's taken place over a long period of time.

1  But do you agree that this is the only formal plea offer

2  extended to your client, ma'am?

3        MS. MARSHALL:  I do.  And for the record, Your

4  Honor, the prior attorney -- I looked up in my case file.  The

5  prior attorney was James Griffith.

6        THE COURT:  Okay.

7        MS. MARSHALL:  Just so it's in the record.

8        THE COURT:  Okay.  Thank you.  Thank you.  All

9  right.  Thank you, Ms. Marshall.

10        Mr. Parton, did you hear all of that?  Ms. Marshall

11  is working hard to try to get the best outcome, and there's a

12  lot of "would you consider this" and "would you consider that,"

13  but that's not what we're talking about, what was formally

14  offered to Mr. Parton.  And they're telling me this is your

15  only formal offer you've received; is that right?

16        THE DEFENDANT:  Yes, Your Honor.

17        THE COURT:  Do you have any questions about that,

18  sir?

19        THE DEFENDANT:  No.  I mean, I think Linda has gone

20  over with me -- or Ms. Marshall has gone over with me

21  everything pretty well.

22        THE COURT:  Okay.  Very good.  All right.

23        So, Mr. Rhoades, would you please make a -- tell us,

24  state for the record what you believe the government's evidence

25  would be if this case went to trial?  Would you do that briefly

1  and slowly, please, sir?

2         MR. RHOADES:  Yes, sir.  Judge, as I always do, I,

3  of course, for the record reference the Court and the record to

4  the plea agreement, and specifically within the plea agreement

5  Paragraph 3.

6         But for the purposes of the record, Judge,

7  essentially what the government would produce in a trial of

8  this matter would be a number of lay witnesses and law

9  enforcement that would lay out in some detail the fact that

10 Mr. Parton was involved with a multitude of other people in

11 obtaining and distributing methamphetamine in an amount

12 exceeding 500 grams.  That conspiracy that he was involved in

13 was operated partly or maybe even completely within the Western

14 District of Missouri and at some point during the dates alleged

15 in the indictment.  And also, those people would testify about

16 what Mr. Parton's role in that was, and some of that role would

17 be that he would obtain methamphetamine and distribute to

18 others that, then, would distribute it, and then he would

19 collect money either on the front end or later for those -- for

20 that methamphetamine and use that money to pay for additional

21 amounts of methamphetamine or other related things in lieu of

22 using funds that he had spent on methamphetamine, therefore,

23 again, the money laundering conspiracy.

24        And finally, Judge, that also during this conspiracy

25 and related to it and in furtherance of the conspiracy,

1  Mr. Parton was in possession of firearms, at least one firearm,

2  during the dates charged in the indictment, and, again, within

3  the Western District of Missouri, and that a lot of times that

4  possession was related to trading methamphetamine for firearms

5  or carrying firearms while -- related to the distribution

6  activity.

7          I think that covers pretty much all of the elements,

8  Judge.  I would add that the money judgment would be related

9  specifically to Mr. Parton's, the weight that the Court

10 ultimately finds Mr. Parton responsible for.  Not the entire

11 conspiracy weight, just the weight that they ultimately find

12 him responsible for, and the -- using the monetary calculations

13 that are in that forfeiture allegation.

14         I think that covers all of the counts to which Mr.

15 Parton is pleading guilty, Judge.

16         THE COURT:  All right.  Mr. Parton, sir, did you

17 hear all of that?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  I think Mr. Rhoades is very faithful to

20 Paragraph 3 of the plea agreement, that part of the plea

21 agreement where you and the government agreed to certain facts.

22 Is there any part of that you disagree with, sir?

23         THE DEFENDANT:  No, Your Honor.

24         THE COURT:  So let me go through this just briefly

25 with you.  I want to go through the elements.  You are -- Count

1  One is conspiracy to distribute methamphetamine.  So Count One

2  says in the indictment, sometime between on or about -- well,

3  it doesn't say sometime.  It says between on or about January

4  1, 2017, and July 21, 2020, the exact dates unknown to the

5  grand jury.  So it's during that time frame, at some times,

6  more than one time during that time frame, you worked with

7  other people to sell methamphetamine.  Is that true?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  How would you -- you know, we talk about

10 conspiracies or agreements with one or more persons to -- you

11 had an agreement with one or more persons to sell

12 methamphetamine.  How was -- what was your job, Mr. Parton?

13 How would you describe your role in this conspiracy, sir?

14           THE DEFENDANT:  I was more like a mule.  I would go

15 down to Kansas City, pick up, and then go to St. Joe.

16           THE COURT:  So you would -- would you pay the people

17 in Kansas City for this and then sell it to people in St. Joe?

18 Is that how it worked?

19           THE DEFENDANT:  Yeah.

20           THE COURT:  Okay.  You would buy a large amount, and

21 then you would sell it in smaller amounts; is that how it

22 worked, sir?

23           THE DEFENDANT:  Yes, Your Honor.

24           THE COURT:  Okay.  And you did this on more than one

25 occasion, it says in the plea agreement.  Is that right?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  And the reason people do this,

3    generally, Mr. Parton, is they do it -- they make money.  They

4    get money to live on, and they also get -- they also get the

5    benefit of methamphetamine for themselves.  It's usually both,

6    right?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Is that how it worked for you, sir?

9          THE DEFENDANT:  Yeah, I was -- I wasn't working at

10   the time and needed to make money and slipped into doing the

11   wrong thing, honestly.

12         THE COURT:  Okay.  I appreciate your honesty with

13   us, sir.  So, basically, whatever profits that you derived from

14   that, you were using those to live on.  Were you using those to

15   get methamphetamine too?  Were you using methamphetamine at the

16   same time?

17         THE DEFENDANT:  Yes.  And also just using it to live

18   on, to survive on.

19         THE COURT:  And to buy more methamphetamine, right?

20         THE DEFENDANT:  Yeah.

21         THE COURT:  Okay.  And then during this time, and

22   this is something we see in most of these cases, you were

23   working with these other people.  At different times during

24   this time frame, you're possessing different guns.  Is that

25   correct?

1    THE DEFENDANT:  Yes, Your Honor.

2    THE COURT:  And those guns were to keep you safe

3 when you were buying and selling methamphetamine; is that true?

4    THE DEFENDANT:  Yes, Your Honor.

5    THE COURT:  In fact, I would imagine, Mr. Parton,

6 most of the people in this organization had guns like you,

7 right?

8    THE DEFENDANT:  Yes, Your Honor.

9    THE COURT:  And at some point, it looks like in this

10 plea agreement, I think you were trading guns to somebody for

11 methamphetamine; is that right?

12    THE DEFENDANT:  Yes, sir.

13    THE COURT:  Okay.  And Mr. Rhoades said this.  He

14 said that most of these transactions and most of your work was

15 in like Kansas City and St. Joe, the -- we call it the Western

16 District of Missouri on the Missouri side.  Is that correct?

17    THE DEFENDANT:  Yes, Your Honor.

18    THE COURT:  Mr. Rhoades, sir, have I covered the

19 elements of this sufficiently for this record?

20    MR. RHOADES:  You have, Your Honor.  You did not

21 address specifically the money judgment, if the Court wants to

22 do that.

23    THE COURT:  Okay.  Let's do that.  Thank you,

24 Mr. Rhoades.

25    So, Mr. Parton, you're agreeing that a money

1  judgment can be entered against you, and that's going to be --

2  as we discussed, as soon as -- we're going to try to figure out

3  the amount of the weight of the drugs, and that will be

4  multiplied times the street value of the drugs, and that will

5  be a money judgment that will be assessed to you.  Do you

6  understand that?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  And you're agreeing to that, correct?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Okay.  All right.  Very good.  I'm going

11  to go forward.  Once again, Mr. Parton, we'll go back to any of

12  this stuff that you want to sort out further.

13             So, Mr. Parton, you understand one of the first

14  things that we're going to do when we meet again is to

15  accurately calculate the sentencing guidelines.  And that's

16  listed in the plea agreement, you and your attorney have made

17  certain agreements with the government.  You recall that?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  And you've talked to Ms. Marshall about

20  the sentencing guidelines; is that correct, sir?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  And so, fortunately for me, I have

23  experts in that to help me.  Ms. Marshall is an expert,

24  Mr. Rhoades is an expert, and the United States Probation

25  Office, that's what they do, right?  But really --

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  As long as you know that I'm the one who

3    really calculates those.  I will listen to everybody, and

4    sometimes we all agree, sometimes we disagree, but ultimately,

5    the judge makes the decision on how they'll be calculated.  Do

6    you understand that?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  So while Ms. Marshall is an expert in

9    that, the best she can do is to give you an estimate on how

10   they'll be calculated.  She can't tell you exactly until we do

11   a presentence investigation and until the judge calculates

12   those.  Do you understand that?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  Okay.  So the guidelines -- once we

15   calculate the guidelines, that will generally give us a range

16   of punishment somewhere within the statutory range, sir.  But

17   we consider other things, Mr. Parton.  We consider things like

18   your history, your characteristics, your role in this offense,

19   the nature of this crime.  You know, your honesty with us

20   during the course of this and how you conduct yourself.  We

21   also look at things like the need to protect the public, the

22   need for deterrence, and many other things.  You understand the

23   guidelines don't necessarily control this.  You understand

24   that?

25         THE DEFENDANT:  Yes, Your Honor.

1    THE COURT:  Okay.  Do you understand -- which means

2  I can go above the guidelines or below the guidelines,

3  depending on those other factors and where it takes us.  You

4  understand that?

5    THE DEFENDANT:  Yes, Your Honor.

6    THE COURT:  You understand you're pleading guilty to

7  three felony crimes, sir?

8    THE DEFENDANT:  Yes, sir.

9    THE COURT:  Have you ever been convicted of a felony

10 crime before, sir?

11   THE DEFENDANT:  Yes, sir, in the state one time.

12   THE COURT:  Okay.  What was the charge, sir?

13   THE DEFENDANT:  It was a possession charge.

14   THE COURT:  Okay.  So you understand, Mr. Parton,

15 you already know this, but I've got to tell you anyway, as a

16 convicted felon, you're likely to lose valuable civil rights.

17 Those rights include your right to vote, your right to hold

18 public office, your right to serve on a jury, your right to

19 possess firearms and ammunition.  You understand you're likely

20 to lose all of those rights if you haven't already?

21   THE DEFENDANT:  Yes, Your Honor.

22   THE COURT:  Okay.  Also by pleading guilty -- and

23 this is in your plea agreement referenced in Paragraph 14, but

24 I'll just tell you.  You're likely -- by pleading guilty,

25 you're waiving your right to trial.  You understand that, there

1  will be no trial?

2      THE DEFENDANT:  Yes, Your Honor.

3      THE COURT:  And by waiving your right to trial,

4  Mr. Parton, you're also waiving your right to very important

5  trial-related rights, which include your right to persist in

6  and maintain your plea of not guilty; your right to trial by

7  jury; your right to be represented by counsel, and, if

8  necessary, have the Court appoint counsel at trial and every

9  other stage of the proceeding; your right at trial to confront

10  and cross-examine adverse witnesses; to be protected from

11  compelled self-incrimination; to testify and present evidence;

12  and also to compel the attendance of your own witnesses.  By

13  pleading guilty, sir, you're waiving these important

14  trial-related rights.  Do you understand that, sir?

15      THE DEFENDANT:  Yes, Your Honor.

16      THE COURT:  Mr. Parton, I think you've done an

17  excellent job of answering my questions.  Thank you.  Do you

18  have any questions that remain that I can answer for you or

19  Ms. Marshall can answer for you, sir?

20      THE DEFENDANT:  No, Your Honor.

21      THE COURT:  All right.  We're going to do this

22  officially.  One moment, please.  I just realized --

23  Mr. Rhoades, is Count One a lesser included charge he's

24  pleading guilty to?

25      MS. MARSHALL:  Yes, it is, Your Honor.

1    THE COURT:  Okay.

2    MR. RHOADES:  Let me look at the plea agreement,

3  Judge.  I believe Ms. Marshall would know that off the top of

4  her head in a second, but I think --

5    MS. MARSHALL:  Yes.  It's a C felony, Your Honor.

6    THE COURT:  Thank you.

7    MR. RHOADES:  It is reflected in the plea agreement,

8  Your Honor, as a (b)(1)(C), and that would be a lesser

9  included.  That's correct, Your Honor.

10    THE COURT:  All right.  So, Mr. Parton, you

11  understand, Count One -- I didn't cover this, but your attorney

12  knew this right off the bat because she worked very hard to get

13  this for you, I'm sure -- that Count One is a lesser included

14  offense than what you were originally indicted on.  That's part

15  of your benefit.  Do you understand that?

16    THE DEFENDANT:  Yes, sir.

17    THE COURT:  Okay.  And you knew that, too, didn't

18  you, Mr. Parton?

19    THE DEFENDANT:  Yes, Your Honor.

20    THE COURT:  Yeah.  All right.  So let's do this

21  officially.

22    To Count One, the lesser included charge in the

23  third superseding indictment, do you plead guilty or not

24  guilty?

25    THE DEFENDANT:  Guilty, Your Honor.

1          THE COURT:  Then to Count Two of the third

2    superseding indictment, that's the money laundering, do you

3    plead guilty or not guilty?

4          THE DEFENDANT:  Guilty, Your Honor.

5          THE COURT:  And then to Count Four of the third

6    superseding indictment, that is the gun charge, do you plead

7    guilty or not guilty?

8          THE DEFENDANT:  Guilty, Your Honor.

9          THE COURT:  Very well.  It is the finding of this

10   Court in this case that Mr. Parton is fully competent and

11   capable of entering an informed plea, that he's aware of the

12   nature of the charges and the consequences of this plea, and

13   that this plea of guilty is a knowing and voluntary plea

14   supported by an independent basis in fact containing each of

15   the essential elements of the offense.  Sir, your plea of

16   guilty is, therefore, accepted, and you are now adjudged guilty

17   of the offenses charged in Count One, the lesser included,

18   Count Two, and Count Four of the superseding indictment.

19         Mr. Parton, sir, the way this works is I'm going to

20   order a presentence investigation to be completed.  I would

21   encourage you to cooperate with the report writer so we can get

22   a clear and accurate picture of you and this offense.  As soon

23   as that's complete, we'll meet again, we'll calculate the

24   guidelines, and we'll work on a sentencing.

25         Mr. Rhoades, sir, is there anything else on behalf

1 of the government at this time?

2          MR. RHOADES:  No, Your Honor.

3          THE COURT:  Thank you, sir.  Ms. Marshall, is there

4 anything else on behalf of your client, ma'am?

5          MS. MARSHALL:  No, Your Honor.

6          THE COURT:  Thank you.  Good luck to you,

7 Mr. Parton.  That will conclude this case.  Thank you.

8          THE DEFENDANT:  Thank you, Your Honor.

9          (Videoconference concluded.)

10                        - - -

11                        - - -

12                     <u>CERTIFICATE</u>

13          I certify that the foregoing transcript of

14 proceedings heard by the Court via videoconference is correct

15 to the best of my ability due to limitations of the technology

16 used.

17

18

19  February 3, 2022

20                         /s/_____
                           Kathleen M. Wirt, RDR, CRR
21                         U.S. Court Reporter

22

23

24

25